R. Dale Dixon, Jr., (SBN 241297)
dale@daledixonlaw.com
Phillip A. Medlin (SBN 295954)
phillip@daledixonlaw.com
LAW OFFICES OF DALE DIXON
402 W. Broadway, Suite 1500
San Diego, California 92101
Telephone: (619) 770-1884
Facsimile: (888) 677-5598

Attorneys for Plaintiff Allen Koka

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLEN KOKA, an individual,<br><br>       Plaintiff,<br><br>v.<br><br>SAN DIEGO METROPOLITAN TRANSIT SYSTEM, a public entity; SAN DIEGO TROLLEY, INC., a California corporation; SAN DIEGO TRANSIT CORPORATION, a California corporation; UNIVERSAL PROTECTION SERVICE GP, INC., a California corporation; NMS MANAGEMENT SERVICES, INC., a California corporation; BILL BUCK, an individual; CHRIS MINER, an individual; and DOES 1 through 20, inclusive,<br><br>       Defendants. | Case No. 15-cv-00763-AJB-KSC<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES FOR:**<br><br>**1)  VIOLATION OF CIVIL RIGHTS (42 U.S.C. § 1983);**<br><br>**2)** *MONELL* **CLAIM (42 U.S.C. § 1983);**<br><br>**3) VIOLATION OF CAL. CIVIL CODE § 52.1 (BANE ACT);**<br><br>**4) VIOLATION OF CAL. CIVIL CODE § 51.7;**<br><br>**5) BATTERY;**<br><br>**6) ASSAULT;**<br><br>**7) FALSE IMPRISONMENT/ FALSE ARREST;**<br><br>**8) INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS;**<br><br>**9) NEGLIGENCE; and**<br><br>**10) NEGLIGENT HIRING, SUPERVISION, AND RETENTION OF EMPLOYEES.**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Allen Koka ("Plaintiff"), on information and belief, alleges the following:

## INTRODUCTION

1.     This civil rights action seeks compensatory and punitive damages from the Defendants for seizing, arresting, and brutally beating Plaintiff without justification and in violation of his civil rights under federal and state law.

## JURISDICTION AND VENUE

2.     This case arises under 42 U.S.C. § 1983 and California law.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

3.     This Court has subject matter jurisdiction over Plaintiff's state law claims under its supplemental jurisdiction under 28 U.S.C. § 1367.

4.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the unlawful actions challenged herein occurred in the Southern District of California.

## GENERAL ALLEGATIONS

5.     At all times mentioned herein, Plaintiff was and is an individual and a resident of the County of San Diego, California.  At all relevant times, Plaintiff was an employee of Defendant NMS Management Services, Inc. ("NMS"), a company that contracts with Defendant San Diego Metropolitan Transit System ("MTS") for employees such as Plaintiff to provide janitorial services to MTS property.  Plaintiff, who is not originally from the United States, has dark hair, dark complexion and speaks with a very heavy foreign accent.

6.     Plaintiff is informed and believes and thereon alleges that, at all times herein mentioned, Defendant MTS was and is a California public entity authorized and existing as such in and under the laws of the State of California,

with its headquarters located at 1255 Imperial Avenue, San Diego, CA 92101. MTS is a public entity which provides bus and rail services to the citizens of San Diego directly or by contract with public and private operators.

7. Plaintiff is informed and believes and thereon alleges that at all times herein mentioned, Defendant San Diego Trolley, Inc., ("SDTI") was and is a California corporation and a subsidiary of MTS, acting as the transit authority of the City of San Diego, duly organized and existing under the laws of the State of California and situated in the County of San Diego.

8. Plaintiff is informed and believes and thereon alleges that at all times herein mentioned, Defendant San Diego Transit Corporation ("SDTC") was and is a California corporation and a subsidiary of MTS, acting as the transit authority of the City of San Diego, duly organized and existing under the laws of the State of California and situated in the County of San Diego.

9. Plaintiff is informed and believes and thereon alleges that at all times herein mentioned, MTS, SDTI, and SDTC owned, operated, leased, and/or maintained the property located at 1255 Imperial Avenue, San Diego, CA 92101, where all relevant actions and incidents alleged in this Complaint occurred.

10. Plaintiff is informed and believes and thereon alleges that at all times herein mentioned, MTS possessed the power and authority to adopt policies and prescribe rules, regulations and practices affecting the operation of MTS and its subsidiaries SDTI and SDTC. Furthermore, MTS possessed the power and authority to adopt policies and prescribe rules, regulations, and practices regarding MTS, SDTI, and SDTC employees, such as hiring employees, training employees, disciplining employees, and conducting internal investigations.

11. Plaintiff is informed and believes and thereon alleges that at all times herein mentioned, Defendants Bill Buck ("Buck"), Chris Miner

("Miner"), and Does 1 through 20 were individuals employed by MTS and/or its subsidiaries as transit officers, acting within the course and scope of their employment and also within their actual and apparent authority as officers of a public entity, MTS.

12.     Plaintiff is informed and believes and thereon alleges that at all times herein mentioned, Defendant Universal Protection Service GP, Inc. ("UPS") is a California corporation, qualified to do business in California, and is under contract to provide security and code enforcement/law enforcement services to the MTS and/or its subsidiaries. At all times herein mentioned, UPS employees acted under their authority as security and code enforcement/law enforcement employees of a public entity, MTS, and under color of statutes, ordinances, regulations, customs and usages of the State of California, City of San Diego, and the MTS.

13.     Plaintiff is informed and believes and thereon alleges that at all times herein mentioned, Defendants Buck, Miner, and Does 1 through 20 were also employees of UPS, acting within the course and scope of their employment.

14.     Plaintiff is informed and believes and thereon alleges that at all times herein mentioned, Defendant NMS is a California corporation, qualified to do business in California, and is under contract with Defendant MTS to provide cleaning services to MTS property.  At all times herein mentioned, NMS employees acted within the course and scope of their employment with NMS.

15.      Plaintiff is informed and believes and thereon alleges that each of the Defendants designated as Doe is intentionally responsible in some manner for the events and happenings herein referred to, and thereby proximately caused injuries and damages as herein alleged. The true names of Defendant Does 1 through 20 are unknown to Plaintiff.  Plaintiff will seek leave to amend

this Complaint to show the true names and capacities of Does 1 through 20 when they have been ascertained.

16.    Plaintiff is informed and believes and thereon alleges that Defendants, and each of them, did the acts and omissions hereinafter alleged in bad faith and with knowledge that their conduct violated well established and settled law.  All Defendants, both public and private, conspired with each other to deprive Plaintiff of his constitutional rights and were acting under color of law.

17.    In committing the acts hereinafter alleged, Defendants acted knowingly, maliciously, and/or with reckless or callous disregard for the constitutional rights of Plaintiff, justifying an award of punitive damages under federal and California law against each individual Defendant.

18.    Plaintiff complied with the Government Tort Claims Act and filed a claim with MTS on January 28, 2015.  MTS rejected the claim on February 10, 2015.

19.    The incidents complained of herein began on or around November 13, 2014, on the MTS premises located at 1255 Imperial Avenue, San Diego, CA 92101 ("MTS Property").

20.    As an employee of NMS, who contracts with MTS, SDTI, and SDTC to provide janitorial services to MTS property, Plaintiff was authorized to be on all MTS property, including the MTS Property, for work, to report to work, and for all work-related matters.  Additionally, Plaintiff's supervisor works at and maintains an office located on the MTS Property.

21.    Even though Plaintiff was an employee of NMS, the company had not yet issued him an identification card verifying his employment with the company.

22.    On November 13, 2014, at approximately 10:00 p.m., Plaintiff arrived at the MTS Property to meet his brother, Qooka Qooka ("Qooka"), who

was also an employee of NMS, and to give his supervisor, Roberto [last name presently unknown], his social security card so that NMS could make an employee identification card for Plaintiff.  At that time, Plaintiff had been working for NMS for approximately one week.

23.    As Plaintiff was walking on the MTS Property, Defendants Buck, Miner, and Does 1 through 20 quickly and contentiously approached Plaintiff, surrounded him, and demanded that he tell them what he was doing on the MTS Property.  Defendants told Plaintiff that the area was private property and that no one is allowed on the property other than employees with authorization.

24.    Plaintiff informed Defendants Buck, Miner, and Does 1 through 20 that he was an employee of NMS and was therefore authorized to be on the MTS Property.

25.    Defendants Buck, Miner, and Does 1 through 20 asked for Plaintiff's work identification.  Plaintiff informed Defendants that he, as a new employee of NMS, had not yet been issued an identification card.

26.    Defendants Buck, Miner, and Does 1 through 20 told Plaintiff that they did not believe him and then told Plaintiff he was trespassing.

27.    Plaintiff advised Defendants Buck, Miner, and Does 1 through 20 that they should speak to Plaintiff's supervisor, who was on the premises at the time.  Plaintiff advised those Defendants that his supervisor would confirm that Plaintiff was an employee of NMS and was authorized to be on the MTS Property.  Plaintiff even pointed those Defendants in the direction of the supervisor's office and pleaded with them to talk to his supervisor to clear up the matter.

28.    Defendants Buck, Miner, and Does 1 through 20 still rejected the claim and told Plaintiff that they did not believe him.  Defendants also refused to do as little as walk several yards to Plaintiff's supervisor's office to confirm Plaintiff's claim, even though any one of them could have done so while

1   leaving the other Defendants surrounding Plaintiff.  In other words, it was a

2   perfectly viable and reasonable solution to the matter for any one of the

3   individual Defendants to go to Plaintiff's supervisor's office and confirm

4   Plaintiff's authorization to be on the MTS Property while the other individual

5   Defendants stayed with Plaintiff.  Nonetheless, Defendants refused to confirm

6   or dispel Plaintiff's claim and instead stayed in their positions, surrounding

7   Plaintiff and harassing him.

8       29.    Throughout the entire altercation, Defendants Buck, Miner, and

9   Does 1 through 20 relentlessly interrogated and harassed Plaintiff.  The number

10  of individual Defendants surrounding Plaintiff grew in numbers; they took

11  Plaintiff's government issued identification card; they repeatedly told him he

12  was breaking the law; they told him he could not talk on the phone, even

13  though Plaintiff was trying to reach his brother or his supervisor to resolve the

14  matter; they mocked him; they agitated him; and they refused to let him leave

15  the circle they created around him.  All comments were made with an angry

16  tone of voice and a threatening presence towards Plaintiff, as if they were

17  trying to scare him.

18      30.    After many minutes of harassing and intimidating Plaintiff,

19  Defendants Buck, Miner, and Does 1 through 20 told Plaintiff they were going

20  to cite him for trespassing.  Defendant Buck began to write up the citation.

21      31.    While Defendants Buck, Miner, and Does 1 through 20 were

22  surrounding, detaining, harassing, threatening and intimidating Plaintiff,

23  Plaintiff's supervisor arrived and approached Defendants, informing them all

24  that Plaintiff was a NMS employee and was, in fact, authorized to be on the

25  MTS Property.

26      32.    Even in the face Plaintiff's supervisor informing them that

27  Plaintiff was, in fact, authorized to be on the MTS Property, which indisputably

28  dispelled any suspicion that Plaintiff was trespassing or committing any other

crime or violation, Defendants Buck, Miner, and Does 1 through 20 still refused to let Plaintiff go.  Indeed, Defendant Buck said "[the officers] don't care about [Plaintiff's] supervisor."  Defendant Miner told Plaintiff's supervisor that, instead of letting Plaintiff go, they were going to "hang on to him for a little bit" because they did not like his attitude.

33.     Plaintiff's brother approached Defendants Buck, Miner, and Does 1 through 20 and informed them that Plaintiff was an employee of NMS and was authorized to be on the premises.  Defendants rejected the claim and ordered Plaintiff's brother to back away and not to interfere with their detention of Plaintiff.

34.     Plaintiff pleaded to Defendants Buck, Miner, and Does 1 through 20 to please let him go, but they all refused. They started simultaneously drawing closer to Plaintiff in a threatening and intimidating fashion, to the point where several individual Defendants were within inches of Plaintiff's face.

35.     Defendants Buck, Miner, and Does 1 through 20 then tried to force Plaintiff to sign a citation for trespassing, even though they knew Plaintiff was not trespassing onto the MTS Property.

36.     Plaintiff refused to sign the citation.  Plaintiff stated that he could not read English well and would not sign anything he could not read and understand.  Plaintiff additionally refused to sign the citation because it was for trespassing, and Defendants Buck, Miner, and Does 1 through 20 knew that Plaintiff was not trespassing.  Plaintiff pleaded with the Defendants to return his ID, leave him alone, and let him go.

37.     Defendants Buck, Miner, and Does 1 through 20 became even more angered, oppressive, harassing, intimidating and threatening with Plaintiff's refusal.  Those Defendants told Plaintiff that, if he did not sign the ticket, they would arrest him, put him in handcuffs, and take him to jail.  They

1   repeatedly pressured Plaintiff to sign the citation.  Plaintiff still refused and

2   asked Defendants to let him go.

3       38.   Defendants Buck, Miner, and Does 1 through 20 then began

4   viciously and brutally beating Plaintiff.

5       39.   Defendant Buck was the first to strike; he grabbed Plaintiff by his

6   throat and slammed him on the ground. At that point, multiple Defendants

7   simultaneously jumped on top of Plaintiff and began hitting Plaintiff's head on

8   the concrete ground.  Defendants slammed Plaintiff's head against the concrete

9   so hard that Plaintiff lost consciousness.  Defendants also stomped on

10  Plaintiff's chest, back, arms and legs.

11      40.   Plaintiff screamed in pain as Defendants Buck, Miner, and Does 1

12  through 20 viciously beat him.  Defendants did not cease beating Plaintiff.

13      41.   While he was being beaten on the ground, Plaintiff and Qooka

14  pleaded with Defendants not to step on Plaintiff's chest and stomach, as

15  Plaintiff recently had surgery in that area of his body.  Defendants ignored the

16  pleas and continued to stomp on Plaintiff's chest and stomach, digging their

17  knees and feet into Plaintiff's chest as he screamed in pain.

18      42.   Qooka begged Defendants Buck, Miner, and Does 1 through 20 to

19  stop beating Plaintiff, but Defendant Miner and several Doe Defendants

20  maliciously and forcefully pushed Qooka away and threatened to arrest him if

21  he did not walk away at that moment.  Although Qooka heeded the request and

22  walked away, he was chased down by Defendant Miner and several Doe

23  Defendants and arrested.  After handcuffing Qooka, Defendant Miner and

24  several Doe Defendants put Qooka in an SUV where he could not see what the

25  other Defendants were doing to Plaintiff.

26      43.   Meanwhile, Plaintiff was handcuffed, moved towards a separate

27  vehicle and thrown on the ground.  Defendant Buck and several Doe

28  Defendants then tied Plaintiff's legs together and continued to beat him.

44.    Throughout the incident, Defendants Buck and Miner were both wearing body cameras.  Those body cameras captured certain parts of the beating administered to Plaintiff by Defendants.

45.    Although transit officers and employees issued such body cameras are required to wear the cameras on their chests at all times, Defendant Buck intentionally removed his body camera during Plaintiff's beating and placed it on the hood of a car, facing away from the beating in an effort to conceal the beating from being captured on video.  Although not captured on video, the audio portion of the recording reveals Plaintiff screaming in pain from that point on.

46.    After several minutes of beating Plaintiff, two of the Doe Defendants returned to the vehicle where the body camera had been placed and began discussing the beating. While one Doe Defendant was talking about the beating, another Doe Defendant abruptly interrupted him, directed his attention to the body camera sitting on the car, and said "Sarge, that's still hot."  The Doe Defendant turned around, looked at the body camera, and immediately walked away to continue discussing the beating with the other Doe Defendant, away from the camera.

47.    Plaintiff was beaten so severely that an ambulance was called to transport him to the emergency room.

48.    Defendants Buck, Miner, and Does 1 through 20 continued to hold and beat Plaintiff until the ambulance and paramedics arrived.  Once the paramedics arrived, several Doe Defendants and paramedics took Plaintiff, who was still in handcuffs, put him on a gurney and transported him to the emergency room, where he would spend the remainder of the night.  As Plaintiff was being transported away, Defendants joked with each other about how Plaintiff would no longer be working for NMS after the beating.

49.   Defendant Buck then formally issued Plaintiff a citation for: (1) resisting/delaying/obstructing a public officer; and (2) entering MTS property not open to the public.

50.   For reasons unknown to Plaintiff and unsupported by video and audio evidence, Plaintiff was also issued a citation by the San Diego Police Department ("SDPD") for misdemeanor battery against a transit employee. Plaintiff is informed and believes and thereon alleges that the citing and arresting SDPD officer's last name is Pierre-Autoine.  Plaintiff is informed and believes and thereon alleges that the San Diego Superior Court later dismissed that charge against Plaintiff.

51.   In his Emergency Record notes, the ER doctor who treated Plaintiff noted that MTS employees stated they witnessed Plaintiff lose consciousness for approximately 30 seconds.

52.   At the hospital, Plaintiff was examined and treated for multiple injuries caused by Defendants, including but not limited to head, chest, back, wrist, and knee injuries.

53.   Plaintiff had to go to another hospital the next day, November 14, 2014, to undergo further examination and treatment of those injuries.

54.   On or around November 18, 2014, Plaintiff received notice from MTS that it voluntarily dismissed the charges against Plaintiff.

55.   Plaintiff is still undergoing treatment for the injuries caused by Defendants to his back.  Furthermore, and understandably, Plaintiff quit his job because of the incident.  Plaintiff quit his job because he had to report to work in the same general area where Defendants Buck, Miner, and Does 1 through 20 work, and Plaintiff feared being beaten again. Plaintiff no longer feels comfortable riding MTS buses or trolleys because he fears he will encounter Defendants Buck, Minor, and/or Does 1 through 20 and be beaten by them again.

56.     Plaintiff is informed and believes and thereon alleges that upon being informed of Plaintiff's accusations, Defendants MTS, SDTI, SDTC, and UPS never commenced an administrative investigation into the matter or took any action to discipline or reprimand Defendants Buck, Miner, and Does 1 through 20 for their wrongdoing.

57.     Plaintiff is informed and believes and thereon alleges that, in the weeks following Plaintiff's beating, Defendants contacted Plaintiff several times through his supervisor in an effort to informally settle the matter and buy Plaintiff's silence.

## FIRST CAUSE OF ACTION

### 42 U.S.C. § 1983 VIOLATION OF CIVIL RIGHTS – EXCESSIVE FORCE, UNREASONABLE SEIZURE OF PERSON, FALSE ARREST, AND CONSPIRACY TO DEPRIVE CIVIL RIGHTS

### (Against Defendants Buck, Miner, and Does 1 through 20)

58.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 57 of this Complaint, and each and every part thereof, with the same force and effect as though set out at length herein.

59.     Through the aforementioned acts, Defendants Buck, Miner, and Does 1 through 20, acting under color of law, intentionally deprived Plaintiff of rights secured to him by the United States Constitution and federal law. Specifically, Defendants unreasonably and unlawfully seized Plaintiff, used excessive and unreasonable force against Plaintiff, unlawfully arrested Plaintiff, and conspired together to justify and conceal their actions against Plaintiff, all in violation of the Fourth and Fourteenth Amendments of the United States Constitution.

60.     As a result of their conduct, the above-noted Defendants are liable for Plaintiff's injuries, either because they were integral participants in the

1  misconduct, or because they failed to intervene when they had the opportunity
2  and duty to do so to prevent these violations.

3     61.    As a direct and proximate result of the above-noted Defendants'
4  acts and omissions, Plaintiff has suffered damages, including but not limited to
5  pain and suffering, extreme mental and emotional distress, severe physical
6  injuries, medical expenses, attorneys' fees, costs of suit, loss of his job, loss of
7  earnings, and other pecuniary losses not yet ascertained.

8     62.    Plaintiff alleges that the acts of the individual Defendants were
9  willful, malicious, intentional, oppressive, reckless, and/or were done in willful
10  and conscious disregard of Plaintiff's rights, welfare and safety, thereby
11  justifying the awarding of punitive and exemplary damages in an amount to be
12  determined at trial.

13              **SECOND CAUSE OF ACTION**

14    *MONELL* **VIOLATION - UNLAWFUL CUSTOM AND PRACTICE**
15              **UNDER 42 U.S.C. § 1983**

16       **(Against Defendants MTS, SDTI, SDTC, and UPS)**

17     63.    Plaintiff incorporates by reference the allegations contained in
18  paragraphs 1 through 62 of this Complaint, and each and every part thereof,
19  with the same force and effect as though set out at length herein.

20     64.    Defendants MTS, SDTI, and SDTC are and at all times herein
21  mentioned have been public entities duly authorized and existing as such in and
22  under the laws of the State of California, and at all times herein mentioned,
23  MTS possessed the power and authority to adopt policies and prescribe rules,
24  regulations, and practices affecting the operation of the MTS, SDTI and SDTC
25  and its practices and customs related to training employees, disciplining
26  employees, internal investigations, personnel supervision, records maintenance,
27  and the proper uses of force by its transit officers and other employees.

28

65.   At all times herein mentioned, Defendant UPS was acting under color of state law pursuant to *Dennis v. Sparks*, 449 U.S. 24 (1980).

66.   Defendants MTS, SDTI, SDTC and UPS have condoned an ongoing pattern of misconduct and brutality committed by its transit officers and other employees.  Defendants MTS, SDTI, SDTC, and UPS maintained or permitted one or more of the following official policies, customs, or practices:

   A.   Failure to provide adequate training and supervision to transit officers and other employees with respect to constitutional limits on use of force, detention, and arrests;

   B.   Failure to adequately discipline or retrain officers and employees involved in misconduct;

   C.   Selection, retention, and assignation of officers with demonstrable propensities for excessive force, violence, dishonesty, and other misconduct;

   D.   Condonation and encouragement of officers in the belief that they violate the rights of persons such as Plaintiff with impunity, and that such conduct will not adversely affect their opportunities for promotion and other employment benefits;

   E.   Regaining, assigning, and selecting transit officers and employees with known propensities for excessive force, violence, dishonesty and other misconduct, and failing to take adequate steps to discipline such persons;

   F.   Failure to practice and enforce proper reporting and investigation of use of force by transit officers and other employees;

   G.   Enforcing a "code of silence," whereby transit officers and other employees protect each other from investigation and consequences of their wrongdoing;

H.    Ratification by the highest levels of authority of the specific unconstitutional acts alleged in this Complaint.

67.    Defendants Buck, Miner, and Does 1 through 20 were employees of MTS, SDTI, SDTC and UPS, acting under color of law and under the direction and control of their employers, knowingly and intentionally acted pursuant to these aforementioned policies, customs, and practices when they unlawfully seized, arrested, and viciously beat Plaintiff.

68.    By reason of the policies, customs, and practices, Plaintiff's rights under the Fourth and Fourteenth Amendments of the United States Constitution were violated.

69.    As a direct and proximate result of these illegal policies, customs, and practices, Plaintiff has suffered damages, including, without limitation, pain and suffering, extreme mental and emotional distress, severe physical injuries, medical expenses, attorney's fees, costs of suit, loss of his job, loss of earnings and other pecuniary losses not yet ascertained.

## THIRD CAUSE OF ACTION

## VIOLATION OF CAL. CIVIL CODE § 52.1 (BANE ACT)

**(Against Defendants MTS, SDTI, SDTC, UPS, Buck, Miner, and Does 1-20)**

70.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 69 of this Complaint, and each and every part thereof, with the same force and effect as though set out at length herein.

71.    Through the aforementioned acts, Defendants Buck, Miner, and Does 1 through 20 interfered or attempted to interfere with Plaintiff's civil rights guaranteed by the United States Constitution, the California Constitution, and California law by using violence, threats of violence, intimidation, and coercion, thereby violating California Civil Code § 52.1.

72.    Plaintiff's claims against Defendants MTS, SDTI, SDTC and UPS are based on their maintaining and permitting the policies, customs, and

practices described in paragraph 66 that violated Plaintiff's constitutional rights.

73.     As a result of their conduct, Defendants are liable for Plaintiff's injuries, either because they were integral participants in the misconduct, or because they failed to intervene when they had the opportunity and duty to do so to prevent these violations.

74.     As a direct and proximate result of Defendants' acts and omissions, Plaintiff has suffered damages, including but not limited to pain and suffering, extreme mental and emotional distress, severe physical injuries, medical expenses, attorneys' fees, costs of suit, loss of his job, loss of earnings, and other pecuniary losses not yet ascertained.

75.     Plaintiff alleges that the acts of the individual Defendants were willful, malicious, intentional, oppressive, reckless, and/or were done in willful and conscious disregard of Plaintiff's rights, welfare and safety, thereby justifying the awarding of punitive and exemplary damages in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION
## VIOLATION OF CAL. CIVIL CODE § 51.7
**(Against Defendants MTS, SDTI, SDTC, UPS, Buck, Miner, and Does 1-20)**

76.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 75 of this Complaint, and each and every part thereof, with the same force and effect as though set out at length herein.

77.     Defendants Buck, Miner, and Does 1 through 20 intentionally threatened and committed violence against Plaintiff.

78.     A motivating reason for the threats and violent acts of Defendants Buck, Miner, and Does 1 through 20 was their perception of Plaintiff as a person of foreign national origin.

79.     A reasonable person in Plaintiff's position would have been intimidated by the conduct of Defendants Buck, Miner, and Does 1 through 20, and Plaintiff was in fact intimidated by their conduct.

80.     The violent acts of Defendants Buck, Miner, and Does 1 through 20 caused Plaintiff to suffer severe physical injuries, extreme emotional distress, fear, trauma, and humiliation.

81.     In causing such harm to Plaintiff, Defendants Buck, Miner, and Does 1 through 20, acted under color of authority, within the course and scope of their employment, and in conspiracy with each other, and pursuant to the established policies, practices, and customs of Defendants MTS, SDTI, SDTC, and UPS.

82.     The conduct of Defendants Buck, Miner, and Does 1 through 20, and all other Defendants, was consented to, ratified, approved, concealed, covered up, condoned, accepted, and/or encouraged by each other, for their own benefit and gain, knowing that the conduct would result in harm to Plaintiff and other similarly situated members of the general public who are of foreign national origin.

83.     As a direct and proximate result of Defendants' acts and omissions, Plaintiff has suffered damages, including but not limited to pain and suffering, extreme mental and emotional distress, severe physical injuries, medical expenses, attorneys' fees, costs of suit, loss of his job, loss of earnings, and other pecuniary losses not yet ascertained.

84.     Plaintiff alleges that the acts of the individual Defendants were willful, malicious, intentional, oppressive, reckless, and/or were done in willful and conscious disregard of Plaintiff's rights, welfare and safety, thereby justifying the awarding of punitive and exemplary damages in an amount to be determined at trial.

///

## FIFTH CAUSE OF ACTION

## BATTERY

**(Against Defendants MTS, SDTI, SDTC, UPS, Buck, Miner, and Does 1-20)**

85.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 84 of this Complaint, and each and every part thereof, with the same force and effect as though set out at length herein.

86.     Defendants committed battery against Plaintiff when they intentionally and brutally beat him without justification or consent.

87.     Defendants' battery caused Plaintiff to suffer severe physical injuries, extreme emotional distress, fear, trauma, and humiliation.

88.     As a result of their conduct, Defendants are liable for Plaintiff's injuries, either because they were integral participants in the misconduct, or because they failed to intervene when they had the opportunity and duty to do so to prevent the battery from occurring.

89.     As a direct and proximate result of Defendants' acts and omissions, Plaintiff has suffered damages, including, without limitation, pain and suffering, extreme mental and emotional distress, severe physical injuries, medical expenses, attorney's fees, costs of suit, loss of his job, loss of earnings and other pecuniary losses not yet ascertained.

90.     Plaintiff is informed and believes and thereon alleges that the acts of the Defendants were willful, malicious, intentional, oppressive, reckless, and/or were done in willful and conscious disregard of Plaintiff's rights, welfare and safety, thereby justifying the awarding of punitive and exemplary damages in an amount to be determine at time of trial.

///

///

///

///

## SIXTH CAUSE OF ACTION

### ASSAULT

**(Against Defendants MTS, SDTI, SDTC, UPS, Buck, Miner, and Does 1-20)**

91.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 90 of this Complaint, and each and every part thereof, with the same force and effect as though set out at length herein.

92.    Defendants committed assault against Plaintiff when they intentionally and unlawfully placed Plaintiff in reasonable fear of his safety and physical and emotional wellbeing.

93.    As a result of their conduct, Defendants are liable for Plaintiff's injuries, either because they were integral participants in the misconduct, or because they failed to intervene when they had the opportunity and duty to do so to prevent the assault from occurring.

94.    As a direct and proximate result of Defendants' acts and omissions, Plaintiff has suffered damages, including, without limitation, pain and suffering, extreme mental and emotional distress, severe physical injuries, medical expenses, attorney's fees, costs of suit, loss of his job, loss of earnings and other pecuniary losses not yet ascertained.

95.    Plaintiff is informed and believes and thereon alleges that the acts of the Defendants were willful, malicious, intentional, oppressive, reckless, and/or were done in willful and conscious disregard of Plaintiff's rights, welfare and safety, thereby justifying the awarding of punitive and exemplary damages in an amount to be determine at time of trial.

///

///

///

///

///

## SEVENTH CAUSE OF ACTION

## FALSE IMPRISONMENT/FALSE ARREST

**(Against Defendants MTS, SDTI, SDTC, UPS, Buck, Miner, and Does 1-20)**

96.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 95 of this Complaint, and each and every part thereof, with the same force and effect as though set out at length herein.

97.     Through the aforementioned acts, Plaintiff was unlawfully confined, seized and arrested by Defendants.

98.     Defendants did not have a warrant, reasonable suspicion of criminality afoot about Plaintiff, or probable cause to believe that Plaintiff had committed a crime.

99.     The confinement of Plaintiff by Defendants was without Plaintiff's consent.

100.    Defendants intentionally confined Plaintiff, and the confinement and detention of Plaintiff was without lawful privilege, especially following Plaintiff's supervisor's informing Defendants that Plaintiff was authorized to be on the premises in question.

101.    Defendants' confinement of Plaintiff was for an appreciable length of time.

102.    Defendants' false arrest caused Plaintiff to suffer physical injuries, extreme emotional distress, fear, trauma, and humiliation.

103.    As a result of their conduct, Defendants are liable for Plaintiff's injuries, either because they were integral participants in the misconduct, or because they failed to intervene when they had the opportunity and duty to do so to prevent the false arrest from occurring.

104.    As a direct and proximate result of Defendants' acts and omissions, Plaintiff has suffered damages, including, without limitation, pain and suffering, extreme mental and emotional distress, severe physical injuries,

1  medical expenses, attorney's fees, costs of suit, loss of his job, loss of earnings
2  and other pecuniary losses not yet ascertained.

3       105.   Plaintiff is informed and believes and thereon alleges that the acts
4  of the Defendants were willful, malicious, intentional, oppressive, reckless,
5  and/or were done in willful and conscious disregard of Plaintiff's rights,
6  welfare and safety, thereby justifying the awarding of punitive and exemplary
7  damages in an amount to be determine at time of trial.

8  **<u>EIGHTH CAUSE OF ACTION</u>**
9  **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
10  **(Against Defendants MTS, SDTI, SDTC, UPS, Buck, Miner, and Does 1-20)**

11       106.   Plaintiff incorporates by reference the allegations contained in
12  paragraphs 1 through 105 of this Complaint, and each and every part thereof,
13  with the same force and effect as though set out at length herein.

14       107.   Defendants' aforementioned conduct was extreme, unreasonable
15  and outrageous.

16       108.   In engaging in the aforementioned conduct, Defendants recklessly
17  disregarded the foreseeable risk that Plaintiff would suffer extreme emotional
18  distress as a result of their conduct.

19       109.   Defendant's conduct caused Plaintiff to suffer severe emotional
20  distress.

21       110.   As a direct and proximate result of Defendants' extreme and
22  outrageous conduct, Plaintiff has suffered damages, including, without
23  limitation, pain and suffering, extreme mental and emotional distress, severe
24  physical injuries, medical expenses, attorney's fees, costs of suit, loss of his
25  job, loss of his job, loss of earnings and other pecuniary losses not yet
26  ascertained.
27  ///
28  ///

## NINTH CAUSE OF ACTION

### NEGLIGENCE

### (Against All Defendants)

111.   Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 110 of this Complaint, and each and every part thereof, with the same force and effect as though set out at length herein.

112.   Defendants owed a duty of care toward Plaintiff.

113.   Defendants breached their duty of care owed to Plaintiff when they negligently and unjustifiably seized, arrested, and beat Plaintiff, causing Plaintiff to suffer physical injuries, extreme emotional distress, fear, trauma, and humiliation

114.   Specifically with regard to Defendant NMS, Plaintiff is informed and believes and thereon alleges that NMS breached its duty of care to Plaintiff by failing to adequately train and supervise Plaintiff and failing to issue Plaintiff an identification card prior to commencing employment at the MTS Property.

115.   As a result of their conduct, Defendants are liable for Plaintiff's injuries either because they were integral participants in the negligent conduct, or because they failed to intervene when they had the opportunity and duty to do so to prevent Plaintiff's injuries.

116.   As a direct and proximate result of Defendants' negligence, Plaintiff has suffered damages, including, without limitation, pain and suffering, extreme mental and emotional distress, severe physical injuries, medical expenses, attorney's fees, costs of suit, loss of his job, loss of his job, loss of earnings and other pecuniary losses not yet ascertained.

///

///

///

# TENTH CAUSE OF ACTION

## NEGLIGENT HIRING, SUPERVISION, AND RETENTION OF EMPLOYEES

### (Against Defendants MTS, SDTI, SDTC and UPS)

117.   Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 116 of this Complaint, and each and every part thereof, with the same force and effect as though set out at length herein.

118.   On or about November 13, 2014 and for several years prior to the incidents alleged in this Complaint, Defendants MTS, SDTI, SDTC and UPS were aware, or in the exercise of due care should have been aware, that Defendants Buck, Miner, and Does 1 through 20 had propensities for excessive force, violence, dishonesty, and other dangerous misconduct that made them unfit to serve as transit officers or any other employee responsible for MTS, SDTI, SDTC and/or UPS code and policy enforcement.

119.   Defendants MTS, SDTI, SDTC and UPS knew or reasonably should have known that Defendants Buck, Miner, and Does 1 through 20 were likely to cause harm and injury to members of the public, including Plaintiff.

120.   Notwithstanding such knowledge, Defendants MTS, SDTI, SDTC and UPS negligently, carelessly and recklessly hired, trained, employed and failed to properly supervise and control Defendants Buck, Miner, and Does 1 through 20, and assigned these Defendants to duties which enabled each of them to violate the law and written policies, including but not limited to assaulting and battering innocent people, illegally detaining innocent people, falsely arresting innocent people, using excessive force against people, and taking steps to "cover up" their misconduct, such as taking off their body cameras off during altercation in order to hide their actions during such altercations.

121.   Defendants Buck, Miner, and Does 1 through 20 acted pursuant to these violent and dangerous propensities when they unjustifiably seized, arrested and beat Plaintiff, causing Plaintiff to suffer physical injuries, extreme emotional distress, fear, trauma, and humiliation.

122.   As a direct and proximate result of MTS', SDTI's, SDTC's and UPS' negligent hiring, supervision and retention of Defendants Buck, Miner, and Does 1 through 20, Plaintiff has suffered damages, including, without limitation, pain and suffering, extreme mental and emotional distress, severe physical injuries, medical expenses, attorney's fees, costs of suit, loss of his job, loss of his job, loss of earnings and other pecuniary losses not yet ascertained.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests entry of judgment in his favor and against Defendants as follows:

A.   For general damages in an amount to be determined at trial;

B.   For special damages, including but not limited to, past, present and/or future wage loss, income and support, medical expenses and other special damages in a sum to be determined at trial;

C.   For punitive and exemplary damages against individual Defendants in an amount to be proven at trial;

D.   For reasonable attorneys' fees and costs of suit; and

E.   For such further relief as the Court may deem just, proper, and appropriate.

Dated: November 2, 2015                     LAW OFFICES OF DALE DIXON


By: *s/R. Dale Dixon, Jr.*
R. Dale Dixon, Jr.
*Attorneys for Plaintiff Allen Koka*

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands a trial by jury.

Dated: November 2, 2015                    LAW OFFICES OF DALE DIXON


                                      By: <u>*s/R. Dale Dixon, Jr.*</u>
                                           R. Dale Dixon, Jr.
                                           *Attorneys for Plaintiff Allen Koka*